# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| THOMAS PEINHOPF, | CIVIL CASE NO. 20-00029 |
| Plaintiff, | |
| vs. | **ORDER GRANTING MOTION TO DISMISS** |
| LOURDES LEON GUERRERO, in her official capacity as Governor of Guam and in her personal capacity, and ARTHUR SAN AGUSTIN, in his official capacity as Director of the DPHSS and in his personal capacity, | |
| Defendants. | |

Before the court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b). *See* ECF No. 32. The motion is fully briefed, and the court deems it suitable for submission without oral argument.[1] For the reasons stated herein, the motion is **GRANTED**.

**I. Background**

Plaintiff is a business owner of Livehouse Inc., and Livehouse Inc., dba The Shady Lady, located in Tumon, Guam. Am. Compl. at ¶ 7, ECF No. 29. On February 19, 2021, Plaintiff filed

---

[1] The court originally set this matter for June 17, 2021. However, counsel for Plaintiff and Defendants concur that the motion may be submitted for decision on the pleadings without oral argument. *See* Mot. at 2, ECF No. 37.

1

an Amended Complaint,² alleging that various Executive Orders and Guidance Memos issued by the Governor of Guam and the Director of the Guam Department of Public Health and Social Services, respectively, due to the COVID-19 pandemic violated the Takings Clause of the Fifth Amendment, the Substantive and Procedural Due Process Clause, and the Equal Protection Clause. *Id.* at 7-12. The Amended Complaint seeks monetary damages and declaratory and injunctive relief. *Id.* at 13.

Given that the Amended Complaint contained the same exhibits as the original Complaint, the U.S. Magistrate Judge's recitation of the relevant Executive Orders and Guidance Memos³ in his Report and Recommendation is set forth herein. *See* ECF No. 26.

On March 14, 2020, the Governor of Guam issued Executive Order 2020-03, declaring a "state of emergency" to "protect[] against the spread of COVID-19." Exec. Order No. 2020-03 (attached as Ex. A to Am. Compl., ECF No. 29). This executive order followed the declaration of the World Health Organization ("WHO") of a "Global Health Emergency with regard to the COVID-19 outbreak" on January 30, 2020, and the United States Health and Human Services Secretary's January 31, 2020 declaration of a "public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19." *Id.*

On March 19, 2020, the Governor of Guam issued Executive Order 2020-05. *See* Ex. B to Am. Compl., ECF No. 29. Under the terms of the executive order, the Governor ordered that "any place of business or public accommodation shall close and be prohibited from on-site operations" effective 12 noon on March 20, 2020 through March 30, 2020. *Id.* The executive order then listed various categories of businesses to whom the prohibition of operations did not apply. *Id.* These included grocery stores, health care supply stores, gas stations, banks, hardware

---

² The original Complaint was dismissed with leave to amend as to Counts I through IV, and Plaintiff's request for monetary damages against Defendants in their official capacities was dismissed with prejudice. *See* Order, ECF No. 27.

³ Plaintiff refers to these documents as the "Business Shutdown Orders." Am. Compl. at ¶ 15, ECF No. 29.

2

stores, and laundromats. *Id.*

On May 8, 2020, the Governor of Guam signed Executive Order 2020-14, moving Guam from Pandemic Condition of Readiness ("PCOR") 1 to PCOR 2 effective May 10, 2020. *See* Ex. C to Am. Compl., ECF No. 29. "All businesses that were allowed to operate during PCOR 1 [were permitted to] continue to operate". *Id.* at 2.b. The Governor of Guam further ordered that other businesses were allowed to operate as limited in Guidance Memo 2020-07, issued by the Guam Department of Public Health and Social Services ("DPHSS"). *Id.* These businesses included real estate and automotive sales, cosmetic establishments, flower shops, and shopping malls. *See* DPHSS Guidance Memo 2020-07 at ¶ 2, Ex. E to Am. Compl., ECF No. 29.

On July 19, 2020, the Governor of Guam signed Executive Order 2020-24, placing Guam in PCOR 3 effective July 20, 2020. *See* Ex. F to Am. Compl., ECF No. 29. "Except for such businesses and activities specifically prohibited under applicable DPHSS Guidance, [the Governor permitted] all business and activities . . . to operate under . . . occupancy limitations" set forth in the executive order. *Id.* at ¶ 2.b.

On August 7, 2020, the Governor of Guam issued Executive 2020-26, temporarily closing bars and taverns effective August 8, 2020 until August 22, 2020. *See* Exec. Order 2020-26 at ¶1.a.i., Ex. G to Am. Compl., ECF No. 29.

"Then, as a consequence of spreading contagion, on August 14, 2020, [Governor] Leon Guerrero issued Executive Order 2020-27 which again closed all businesses except those listed in applicable [DPHSS] guidance." Am. Compl. at ¶ 18, ECF No. 29 and Ex. H thereto.

In response to the Amended Complaint, Defendants filed the instant motion to dismiss. Mot., ECF No. 32. Attached therein is DPHSS Guidance Memo 2021-07 (REV1) that provides guidance, among other things, on the reopening of eating and drinking establishments, including how a bar or a tavern is to operate (i.e., "Customers of each party are authorized to stand in a

3

designated area, limited to no more than 6 persons per party for indoor, no more than 15 persons per party for outdoors; and [s]eparated 6 feet apart from other parties." C.2.a-b.). Ex. C to Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), ECF No. 33. Bars and taverns were permitted to reopen on February 24, 2021, and approved to operate at 50 percent capacity. Ex. A and Ex. D to Defs.' Reply, ECF No. 35.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that, in response to a claim for relief, a party may assert a defense of "failure to state a claim upon which relief can be granted" by way of motion. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted). The court must weed out the legal conclusions—that is "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—in the pleading that are not entitled to a presumption of truth. *Id*. at 678. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citing *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not
4

possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**III. Discussion**

As this court had adopted in the U.S. Magistrate Judge's Report and Recommendation, it will not apply the *Jacobson* test. Rather, this court will individually consider the claims under traditional constitutional scrutiny.

    a. **Count I – Takings Clause Claim**

Count I of the Amended Complaint identifies a claim under 42 U.S.C. § 1983 for violation of the Takings Clause of the Fifth Amendment. Am. Compl. at 7-8, ECF No. 29. "The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick v. Twp. of Scott, Pennsylvania*, 139 S.Ct. 2162, 2167 (2019) (alternations in original). There are two types of takings compensable under the Takings Clause: paradigmatic, which is a direct government appropriation or physical invasion of private property; and regulatory, which involves government regulation of private property "that its effect is tantamount to a direct appropriation or ouster[.]" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). Under the regulatory taking, they are compensable if the government regulation creates a permanent physical invasion of private property, however minor (*Loretto* takings); or completely deprives an owner of "*all* economically beneficial use" of the private property (*Lucas* takings). *Id.* at 538. These two narrow categories are deemed *per se* takings for Fifth Amendment purposes. *Id.* Anything that falls outside of these two categories are governed by the *Penn Central* test which considers the following factors: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

In the instant case, Plaintiff does not allege a paradigmatic taking (the Government did not appropriate or occupy Plaintiff's property), nor does he allege a *Loretto* taking (there was no permanent physical invasion of Plaintiff's property). *See generally* Am. Compl., ECF No. 29. Rather, Plaintiff alleges that the Executive Orders and DPHSS Guidance Memos "deprived him . . . of all economically beneficial use of his property without just compensation" and "worked to prohibit any use of Plaintiff's property and therefore, completely deprived him of all economically beneficial use of his property." Am. Compl. at ¶¶ 39 and 40, ECF No. 29. Accordingly, Plaintiff is alleging a *Lucas* taking.

A *Lucas* taking is a "relatively narrow and relatively rare taking category[], confined to the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted[.]" *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 626 (9th Cir. 2020) (emphasis in original) (internal citations and quotation marks omitted). Further, the regulation must permanently deny all productive use of the property. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330-32 (2002) (holding that temporary ban on property development for 32 months did not constitute per se taking under *Lucas*).

Here, the bar-and-tavern closure was not permanent and as of February 2021, bars and taverns were allowed to operate. *See* Ex. A and Ex. D to Defs.' Reply, ECF No. 35.[4] Accordingly, Plaintiff cannot establish a per se taking under *Lucas*.

Since it is not a permanent taking, the court turns to the *Penn Central* test for its analysis. *See Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 331 (The *Penn Central* is the proper framework in analyzing whether a taking is compensable if the government enacts temporary regulation denying property owners all viable economic use of property). "A 'taking' may more

---

[4] The court takes judicial notice of the Governor of Guam's Executive Orders and DPHSS's Guidance Memos pertaining to COVID-19, as these are publicly available information and are posted on the Government's websites. *See* FED. R. EVID. 201.

6

readily be found when the interference with property can be characterized as a physical invasion by government, [] than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn* Central, 438 U.S. at 124.

The first *Penn Central* factor analyzes the economic impact of the regulation on the claimant. Here, Plaintiff alleges that "Defendants have taken from Plaintiff an amount of no less than $200,000.00 (USD)." Am. Compl. at ¶ 40, ECF No. 29. "The assets of a business . . . unquestionably are property . . . But business in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense[.]" *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (emphasis in original). Similar to the original Complaint, Plaintiff in his Amended Complaint—and in his opposition to the current motion to dismiss—failed to cite any authority recognizing that the temporary inability to sell goods or services, as a matter of law, constitutes a taking of property under the Fifth Amendment.

The second *Penn Central* factor analyzes the extent to which the regulation has interfered with distinct investment-backed expectations. This factor need not be discussed here. The U.S. Magistrate Judge's Report and Recommendation, which this court adopted, had already made a finding that the second factor weighs in favor of Plaintiff. *See* R. & R. at 10, ECF No. 26.

The third *Penn Central* factor analyzes the character of the governmental action. "[C]ourts across the country agree that the final *Penn Central* factor . . . weighs heavily in Defendants' favor." *Daugherty Speedway, Inc. v. Freeland*, 2021 WL 633106, at *5 (N.D. Ind. Feb. 17, 2021). In *Mission Fitness Center, LLC v. Newsom*, for example, the court found that even "assuming plaintiffs can show an economic impact on their property interest and that the Orders interfered with their distinct investment-backed expectations, defendants' Orders nevertheless are quintessential examples of regulations that adjust the benefits and burdens of

7

economic life to promote the common good" and accordingly found that plaintiffs failed to state a claim for a partial regulatory taking. 2021 WL 1856552, at *10 (C.D. Cal. May 10, 2021). *See also Case v. Ivey*, 2021 WL 2210589, at *23 n.13 (M.D. Ala. June 1, 2021) (The first two *Penn Central* factors weigh in favor of plaintiffs, but the third factor weighs in favor of defendants and outweighs the other two factors); *PCG-SP Venture I LLC v. Newsom*, 2020 WL 4344631, at *10 (C.D. Cal. June 23, 2020) (The third *Penn Central* factor outweighs the first and second factors); *Underwood v. City of Starkville, Mississippi*, 2021 WL 1894900, at *7 (N.D. Miss. May 11, 2021) ("[T]hird factor is particularly relevant in cases involving regulations designed to counter public threats like the COVID-19 pandemic.").

Here, the character of the Government's actions greatly weighs in Defendants' favor. The Executive Orders and Guidance Memos were aimed at flattening the curve, slowing the spread of COVID-19, and preventing the health care system from becoming overwhelmed. Even assuming that the first two *Penn Central* factors weigh in Plaintiff's favor, Plaintiff cannot overcome this third factor. In fact, Plaintiff ignored the *Penn Central* analysis altogether and failed to respond to Defendants' arguments on *Penn Central*.[5]

"District Courts have consistently rejected business owners' claims that COVID-related restrictions constitute either a per se taking or a partial taking under *Penn Central*[.]" *MetroFlex Oceanside LLC v. Newsom*, 2021 WL 1251225, at *3 (S.D. Cal. Apr. 5, 2021) (string citations). Plaintiff's takings claim is no different from the long line of cases that were dismissed for failure to state a claim upon which relief can be granted. Count I of the Amended Complaint is dismissed.

    b. **Count II – Substantive Due Process Claim**

Count II of the Amended Complaint identifies a claim under 42 U.S.C. § 1983 for

---

[5] It appears Plaintiff confused the *Penn Central* test with a "necessity defense." *See* Opp'n. at 4-5, ECF No. 34.

violation of the Substantive Due Process under the Fourteenth Amendment. Am. Compl. at 9-10, ECF No. 29. "Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (citation omitted). "Substantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases." *Witt v. Dept. of the Air Force*, 527 F.3 806, 817 (9th Cir. 2008).

Plaintiff asserts, among other things, that "[a]ll fundamental rights comprised within the term liberty, including . . . the right to contract and engage in the common occupations of life . . . are guaranteed substantive due process rights under the Fourteenth Amendment." Am. Compl. at ¶ 54, ECF No. 29. While the right to work or earn a livelihood is protected, *see e.g.*, *Ry. Employees' Dep't v. Hanson*, 351 U.S. 225, 234 (1956), *and Terrace v. Thompson*, 263 U.S. 197, 215 (1923), it is not a fundamental right. The Ninth Circuit, in addressing due process claims by business owners aggrieved by the COVID-19 shutdown, noted that it had "never held that the right to pursue work is a fundamental right," and likewise, "business owners are not a suspect class[.]" *Tandon v. Newsom*, 992 F.3d 916, 930 (9th Cir. 2001) (citation omitted), *disapproved of on other grounds in later proceedings*, 141 S.Ct. 1294 (Apr. 9, 2021). Plaintiff has not provided any legal authority that says otherwise. Accordingly, rational basis applies. *Id.*

Under rational basis review, the inquiry is "whether the government could have had a legitimate reason for acting as it did." *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1262 (9th Cir. 1994), *as amended on denial of reh'g* (Feb. 9, 1995) (emphasis in original omitted). The burden is on Plaintiff. *Id.* Here, Plaintiff did not meet his burden. Plaintiff merely recited the law on substantive due process, *see* Opp'n. at 5-6, ECF No. 34, and made no effort to argue that Defendants did not have a legitimate reason for acting as they did. The court finds that

Defendants had a legitimate reason for issuing the Executive Orders and Guidance Memos; and that is, to safeguard public health and contain the virus's spread. *See* Exhibits to Am. Compl., ECF No. 29. Similar to the court's finding in *Herrin v. Reeves*, this court finds that "the notion that restrictions designed to save human lives [from COVID-19] are 'conscious shocking' to be absurd and not worthy of serious discussion." *Herrin v. Reeves*, 2020 WL 5748090, at *9 (N.D. Miss. Sept. 25, 2020).

Moreover, Plaintiff's Amended Complaint does nothing more than recite the legal standard and make conclusory statements that his rights have been violated, *e.g.*, Defendants' conduct is "arbitrary, capricious, irrational, and abusive" (¶ 52); Defendants' actions "shock the conscience" (¶ 53); Plaintiffs have the "right to pursue lawful employment and livelihood" (¶ 47); and Plaintiff "possesses a protectible property interest" in his business license to operate a bar, his lease to operate a bar, and his business earnings (¶¶ 48-49). *See* Am. Compl., ECF No. 29.

Accordingly, for the reasons stated herein, Plaintiff has not stated a substantive due process claim. Count II of Plaintiff's Amended Complaint is dismissed.[6]

### c. Count III – Procedural Due Process Claim

Count III of the Amended Complaint identifies a claim under 42 U.S.C. § 1983 for violation of the Procedural Due Process under the Fourteenth Amendment. Am. Compl. at 10-11, ECF No. 29. To state a claim for violation of procedural due process under Section 1983, a plaintiff must allege facts showing: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Tutor-Sabila Corp. v. City*

---

[6] Other courts that addressed a similar substantive due process claim as a result of COVID-19 closure orders have reached the same conclusion. *See e.g.*, *Culinary Studios, Inc. v. Newsom*, 2021 WL 427115 (E.D. Cal. Feb. 8, 2021); *Mission Fitness Ctr., LLC v. Newsom*, 2021 WL 1856552 (C.D. Cal. May 10, 2021); and *Paradise Concepts, Inc. v. Wolf*, 482 F. Supp. 3d 365, 371 (E.D. Pa. 2020).

*of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (citations omitted).

Plaintiff alleges that none of the following due process protections have been afforded to him:

> a. the determinations of non-essentialness are written and do not permit evaluation by a neutral arbitrator; b. the determinations of non-essentialness do not provide for an opportunity to be heard; c. the determinations of non-essentialness do not offer an opportunity to present witnesses; d. the determination of non-essentialness do not permit an opportunity to cross examine witnesses; e. the determination of non-essentialness do not provide for a reasoned decision; and, f. the determination of non-essentialness do not provide for an opportunity for an appeal.

Am. Compl. at ¶ 60, ECF No. 29.

The Ninth Circuit "has specifically rejected the notion that the Due Process Clause requires this type of process before enacting and enforcing laws of general applicability." *Excel Fitness Fair Oaks, LLC v. Newsom*, 2021 WL 795670, at *5 (E.D. Cal. Mar. 2, 2021), *citing Halverson*, 42 F.3d at 1260. "'[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing[.]" *Halverson*, 42 F.3d at 1260. Due process is satisfied when the governmental body performs its responsibilities in the normal manner prescribed by law. *Id.* "It would be impractical—if not nonsensical—to allow every individual member of the public to voice their opinion directly and personally before a rule of general applicability is put into effect, particularly during a time of crisis [like the COVID-19 pandemic]." *Underwood v. City of Starkville, Mississippi*, 2021 WL 1894900, at *6 (N.D. Miss. May 11, 2021), *citing Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915).

Here, the Executive Orders and Guidance Memos are clearly governmental decisions of general applicability. Defendants' actions "affect all individuals and businesses operating in their respective jurisdictions [in this case, non-essential businesses], and are not directed at one or a

11

few individuals." *Mission Fitness Ctr.*, 2021 WL 1856552, at *8.

Even assuming Plaintiff has met the first element—asserting a constitutionally protected right, Plaintiff has not met the second element—a denial of adequate procedural protections. Plaintiff does not allege that the Executive Orders and Guidance Memos are directed at him alone or a few others (nor could he allege that). In fact, Plaintiff brings this suit as a class action. "The class Plaintiff represents is so numerous as to make a joinder of each member of the class impracticable." Am. Compl. at ¶ 11, ECF No. 29. Plaintiff also failed to address any of Defendants' legal arguments on this issue and did not even attempt to distinguish the cases cited by Defendants that specifically dismissed procedural due process claims as it relates to COVID-19 emergency orders.

Based on the foregoing, Plaintiff failed to state a procedural due process claim upon which relief can be granted. Count III of the Amended Complaint is dismissed.

### d. Count IV – Equal Protection Clause Claim

Count IV of the Amended Complaint identifies a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause under the Fourteenth Amendment. Am. Compl. at 11-12, ECF No. 29. Plaintiff alleges that the Government's classification of "essential" versus "non-essential" is arbitrary and irrational and therefore violates the Equal Protection Clause. *Id.* at ¶ 65. Plaintiff compares his bar-and-tavern business to restaurants in that restaurants "operate bars within their establishments" and funeral homes in that "people would possibly gather[.]" *Id.* at ¶ 69-69. Restaurants and funeral homes remained open. *Id.*

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). The Supreme

Court has "repeatedly held that 'a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose.'" *Cent. State Univ. v. Am. Ass'n of Univ. Professors*, 526 U.S. 124, 127-28 (1999) (alternation in original) (citations omitted).

Plaintiff's allegation does not involve a fundamental right, such as the free exercise of religion, speech, or the right to vote. Further, Plaintiff is not a suspect class. *See Williamson v. Lee Optical*, 348 U.S. 483-89 (1955) (business owners are not a suspect class); *Tandon v. Newsom*, 2021 WL 411375, at *20 (N.D. Cal. Feb. 5, 2021) ("[O]ther courts considering Equal Protection challenges to COVID-related restrictions brought by business owners have concluded that no suspect class is implicated."). Accordingly, rational basis review applies.

Under the rational basis review standard, "regulations must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id*. (internal brackets and quotation marks omitted), *citing Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). The burden is on Plaintiff. *Id.* Thus, "courts must uphold the classification as long as it 'finds some footing in the realities of the subject addressed by legislation.'" *Id.* (citations and internal brackets omitted).

Here, Plaintiff has not met his burden. Plaintiff's establishment is *not* similarly situated to businesses such as restaurants that serve food,[7] or funeral homes that are necessary to remain open to dispose of dead bodies. Plaintiff has not alleged that a similar establishment such as his, a bar/tavern that serves exclusively alcoholic beverages, is considered "essential" by Defendants. Plaintiff also failed to address Defendants' arguments on this issue. As previously held by the

---

[7] The court takes judicial notice of Defendants' Exhibits A and B to the Memorandum in Support of Motion to Dismiss. *See* Defs.' Mem., ECF No. 33. Exhibits A and B are a copy of the menus of Horse & Cow and Plaintiff's establishment, respectively. A comparison of the two exhibits show that Horse & Cow is a restaurant serving food, while Plaintiff's establishment serves exclusively alcoholic beverages.

court, "[n]either has the Plaintiff shown that the classifications at issue here were drawn on any basis other than the risk posed to the public health." R. & R. at 16, ECF No. 26. Bars are "higher-risk environments" compared to restaurants. *Big Tyme Investments, LLC v. Edwards,* 985 F.3d 456, 469 (5th Cir. 2021). There is a legitimate governmental purpose when Defendants classified bar and taverns as non-essential.

Accordingly, Plaintiff failed to plead a plausible claim under the Equal Protection Clause. Count IV of the Amended Complaint is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. Because all counts in the Amended Complaint are dismissed, the court need not address Defendants' argument on qualified immunity. Further, because Plaintiff has already amended his complaint once in response to a previous motion to dismiss and failed to identify additional factual allegations that he could have made that would remedy the deficiencies in the Complaint, and Plaintiff failed to address or refute Defendant's legal arguments in the motion to dismiss, the court finds that any further amendments would be futile.

Accordingly, the above-captioned matter is dismissed with prejudice.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
　**Chief Judge**
**Dated: Jun 14, 2021**